FILED
DISTRICT OF NEBRASKA
AT_____M
AUG 29 1988
William L. Olson, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

STAN DAVIS and RICHARD RAYES, )
)
      Plaintiffs, )  CV88-L-462
)
v. )
)
FRANK O. GUNTER, Director of ) REPORT, RECOMMENDATION
the Department of Correctional)     AND ORDER
Services; HAROLD W. CLARKE, )
Warden, Nebraska State )
Penitentiary; ARLENE MURRAY, )
Employee of the Nebraska )
State Penitentiary, mail room;)
FLORENCE BEITLER, Employee )
of the Nebraska State )
Penitentiary, mail room clerk,)
in their individual and )
official capacities, )
)
      Defendants. )

    Plaintiffs, inmates at the Nebraska State Penitentiary, have filed a civil rights complaint pursuant to 42 U.S.C. §1983. Liberally construing the allegations of the complaint, <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972), I conclude that certain of plaintiff's claims are sufficient to require the defendants to answer, and I shall direct the clerk to issue summons for service upon them. I further conclude that certain claims provide no basis for relief. For the reasons set forth below, I shall recommend that these claims be dismissed.

    Plaintiffs' claims arise from the adoption and implementation of a prison operational memorandum which classifies postage stamps as contraband. The factual allegations of plaintiffs are rather detailed. I shall attempt to summarize them here, and set portions of them forth in greater depth in conjunction with the discussion of their legal claims, as the need arises.

    The operational memorandum (hereinafter the memo) was adopted by defendant Clarke and Gary Grammer on May 9, 1988. Shortly thereafter, plaintiffs each received religious correspondence, which contained postage stamps. Each mailing was returned to its sender, together with a notice of the reason for the return. In addition, each plaintiff received notice that the correspondence had been returned. These procedures are in accordance with those specified in the memorandum.

Shortly thereafter, defendant Beitler sent a letter to True Power Outreach, a religious organization which sent the above-mentioned letter to plaintiff Davis. The letter indicated that there had been a reversal in prison policy with regard to postage stamps, when those stamps were sent to inmates to enable them to return religious correspondence and were affixed to envelopes. This change in policy was confirmed by defendant Murray, in response to an interview request from inmate Harold Wilson. However, defendants Clarke and Gunter, responding to grievances by plaintiffs, did not indicate that any such change in policy had been made, adhering to the blanket prohibition of postage stamps outlined in the memo.

Based on these allegations, plaintiffs make a panoply of constitutional and state law claims. The contend that their rights to the free exercise of religion and free speech are abridged by the restriction on the mailing of stamps. They further claim that they have been deprived of property without due process of law by the return of all mail containing postage stamps, without some opportunity to separate the stamps from the remaining mail and a hearing on the return of the mail. Rayes claims that he has been denied equal protection in that Davis was told that religious mail containing pre-stamped envelopes could be sent to him while he (Rayes) was not. In addition, plaintiffs make these claims under parallel provisions of the Nebraska Constitution. Finally, plaintiffs claim that the failure to hold a hearing prior to the adoption of the memo violates the Nebraska Administrative Procedures Act (APA), Neb. Rev. Stat. §84-901, et seq.

## FIRST AMENDMENT

Plaintiffs claim that the return of their religious mail violated their right to free exercise of religion. Inmates have the right to a reasonable opportunity to exercise their religious beliefs. Hudson v. Palmer, 468 U.S. 517, 523 (1984). The exercise of religious beliefs may be limited by prison officials, however, so long as the restrictions bear a reasonable relationship to legitimate penological needs. O'Lone v. Estate of Shabazz, ___ U.S. ___, 55 U.S.L.W. 4792, 4793 (1987).

The initial question in this case must be whether plaintiffs' exercise of religion has been restricted by the stamp policy. With respect to Rayes, I have little difficulty reaching that conclusion. Rayes is allegedly a Seventh-Day Adventist, is being held in segregation, and has no access to clergy of his faith other than through the mail. There are allegations that any funds he received for mailing purposes in the form of money would be diverted to pay accrued expenses for legal copies. These allegations are sufficient to support a claim that the stamp restrictions place limitations on his religious practices.

2

3

Whether the stamp policy places similar restrictions on the exercise of Davis' religious beliefs is less clear. The question left unanswered by Davis' allegations is whether taking classes from True Power Outreach is an exercise of religious beliefs. Davis has made no showing that True Power Outreach is a "religion" within the meaning of the First Amendment, Africa v. Commonwealth of Pennsylvania, 662 F.2d 1025, 1031 (3d Cir. 1981), cert. denied, 456 U.S. 908 (1982), nor has he alleged anything to support a claim that he could not exercise his religious beliefs in another manner. At present he has not alleged that the exercise of his religious beliefs is in any way restricted by the stamp policy.

His failure to plead these allegations does not mean that his claim should not be answered, however. Plaintiffs also make a First Amendment claim based on the freedom of speech. It is clear that the stamp policy has some impact on their ability to communicate with others outside the prison. Therefore, it is a restriction on their First Amendment rights. The standard applicable to this claim is identical to that which applies to the religious claims. See Turner v. Safley, ___ U.S. ___, 55 U.S.L.W. 4719, 4722 (1987). Thus, to withstand constitutional scrutiny as to either claim, the stamp policy will have to meet the same standard. Under these circumstances it would be appropriate for the defendants to answer the religious and speech claims of both plaintiffs, bearing in mind that plaintiffs will ultimately be required to prove that the stamp policy infringes on the free exercise of their religious beliefs, and in conjunction, that the beliefs at issue are religious in nature.

All of the defendants are alleged to have been directly involved in these claimed constitutional deprivations. Defendant Clarke promulgated the stamp policy, and, together with defendant Gunter, upheld it in the face of a grievance challenge. Defendants Murray and Beitler actually returned plaintiffs' mail pursuant to the policy. Each defendant must therefore answer these claims.

## DUE PROCESS

The core of plaintiffs' due process claim is that they had a right to some type of hearing before the mail containing stamps could be returned to the sender. This contention appears to "place the cart before the horse," in that plaintiffs have reached a conclusion as to the type of procedures required by due process before showing that they had any sort of interest protected by due process. Whether there has been a deprivation of a protected interest is the initial inquiry which must be made in reviewing any due process claim. Board of Regents v. Roth, 408 U.S. 564, 571 (1972). Unless such an interest is at stake, the protections of the Due Process Clause do not apply.

3

The stamp policy represents a declaration by prison officials that stamps are contraband. For purposes of this procedural due process claim, the legitimacy of that policy must be presumed.[1] Whether it is an exaggerated response to security concerns is relevant to whether it violates the First Amendment; it is not relevant to the due process claim. The fact is that prison officials have classified these materials as contraband, and the scope of any protected interest which plaintiffs may have must be determined on the basis of that classification.

It is clear that the Constitution itself does not create a protected property interest in material classified as contraband. See Lingo v. Boone, 402 F.Supp. 768, 771-72 (N.D. Cal. 1975). Nor is any constitutional protection found merely because contraband has been placed in the mail. Sledge v. Carlson, 405 F.Supp. 1315, 1317 (W.D. Okla. 1975). Thus, as with many property interests, it is necessary to look to state law or regulations. Roth, 408 U.S. at 571-72.

A review of the provisions of the memo relating to stamps shows that no protected property interest in them is created. The memo clearly states that stamps are contraband, and that neither they, nor any items with which they are mailed, will be delivered to the inmate. Instead, the entire mailing will be returned to the sender. Plaintiffs have no property interest in the stamps or the mail in which they are contained. Without such a property interest, they can claim no right to a hearing prior to the return of the mail.

Procunier v. Martinez, 416 U.S. 396 (1974), does not lead to a contrary conclusion. In Procunier, the Court held that censorship of prisoner mail was justified only if (1) the censorship furthered an important or substantial governmental interest unrelated to the suppression of expression and (2) the limitation of First Amendment freedoms was no greater than necessary to the protection of that interest. Id. at 413. In conjunction with this conclusion, the Court held that the

---

[1] In certain circumstances, substantive due process places limitations on the authority of prison officials to classify property as contraband. See Holloway v. Lockhart, 792 F.2d 760, 762 (8th Cir. 1986). Plaintiffs do not raise this claim; they focus on procedural due process. Moreover, it is not necessary to construe the complaint as presenting a substantive due process claim. Substantive due process prohibits classification of property as contraband unless "the legitimate security concerns of the institution require such action." Id. This standard is virtually identical to the First Amendment standard discussed above; resolution of the First Amendment claims would resolve any substantive due process claim as well.

4

application of this standard in a particular case must "be accompanied by minimum procedural safeguards." Id. at 417. The Court stated that prison officials were required to notify a prisoner of the rejection of a letter written by or addressed to him, give the prisoner a reasonable opportunity to protest that decision, and refer that protest to a prison official other than the person who originally determined that the letter was unacceptable. Id. at 418-19.

This holding of Procunier cannot form the basis for a claim of a right to a hearing in this case. The need for such procedures was due to the fact that there would be questions as to whether a particular letter contained material which could be censored. As such, there was the potential for "arbitrary governmental invasion" of the "qualified" interest in free correspondence. Id. at 418. By contrast, it can hardly be claimed that the question of whether mail contains postage stamps is one over which reasonable minds can differ, or that the determination of whether a particular piece of mail contains postage stamps will be in any way aided by procedural protections. The hearing required under the circumstances of Procunier does not translate into a right to a hearing any time mail is returned because it contains contraband. Plaintiffs' due process claim should be dismissed.

## EQUAL PROTECTION

The basis of plaintiffs' equal protection claim is rather difficult to discern. The claim is apparently raised by Rayes only, claiming that he was denied equal protection when Beitler and Murray informed Davis that religious materials containing stamps were acceptable mail, when they did not give similar information to Rayes. This claim provides no basis for relief.

The Equal Protection Clause is essentially a command that the state treat persons similarly situated alike. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 438 (1985). While there have allegedly been varying statements as to the scope of the stamp policy, there is no allegation that it has been enforced differently. Thus, there is no allegation that Rayes has actually been treated differently from Davis. Moreover, defendants Clarke and Gunter, who have the final authority in manners of prison policy, have given no indication that there are exceptions in the policy for religious materials. Because there are no allegations of differing treatment, this claim should be dismissed.

## PENDENT CLAIMS

Plaintiffs make claims under the Nebraska Constitution, citing provisions of that document which are parallel to the federal claims. They also contend that the circumstances in

5

which the stamp policy was promulgated violate the APA. The basis for the latter contention is the failure to hold a public hearing regarding the adoption of the rule prohibiting stamps.

This court may generally assert pendent jurisdiction over state law claims if (1) the case presents a substantial federal claim; (2) the state and federal claims arise from a common nucleus of operative fact; and (3) the claims are such that, without regard to their state or federal character, they would ordinarily be tried in the same proceeding. United Mine Workers v. Gibbs, 383 U.S. 714, 724-25 (1966). However, the United States Supreme Court has held that the Eleventh Amendment prohibits federal courts from asserting pendent jurisdiction over claims that state officials violated state law. Pennhurst State School & Hospital v. Halderman, 465 U.S. 96, 106 (1984). This court has applied this holding to claims that officials of the Department of Correctional Services violated the Nebraska APA. See, e.g., Meis v. Gunter, CV86-L-775, slip op. at 2 (D. Neb. unreported memorandum dated July 13, 1987); Rust v. Grammer, CV85-L-433, slip op. at 17 (D. Neb. unreported memorandum dated April 30, 1987). There appears to be no basis for distinguishing claims which involve state constitutional provisions from those raising statutory claims. Therefore, I shall recommend dismissal of the pendent claims.[2]

### PRELIMINARY INJUNCTION

Plaintiffs have requested a preliminary injunction, requiring the defendants to provide notice to intended recipients of mail containing stamps prior to the return of the mail, and allowing the intended recipients to receive all mail other than that which is contraband while providing several options as to

---

[2] To the extent that the Eleventh Amendment does not prohibit the exercise of pendent jurisdiction over the state constitutional claims, there is an alternative ground for recommending their dismissal. A review of Nebraska law discloses no cases holding that the state constitutional provisions relied upon by plaintiffs afford broader protection than their federal counterparts. The inference to be drawn from this is that the scope of the protection is the same. Under the circumstances, it would make little sense to engage in the same inquiry under both constitutions. The resolution of the federal claims would resolve the state claims as well. A litigant is not entitled to invoke the pendent jurisdiction of a federal court; exercise of the doctrine is discretionary. Gibbs, 383 U.S. at 725. Exercising that discretion, I conclude that the co-extensive nature of the state and federal constitutional provisions at issue would make application of the doctrine improvident in this case, and provides an alternative basis for recommending dismissal of the pendent claims.

6

3

the disposition of the contraband. When determining whether to grant preliminary injunctive relief, a federal court should consider (1) the threat of irreparable harm to the plaintiff; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on the other parties; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest. <u>Dataphase Systems, Inc. v. C L Systems, Inc.</u>, 640 F.2d 109, 113 (8th Cir. 1981). The request for a preliminary injunction is based on the due process claim raised by plaintiffs. Since I have concluded that this claim provides no basis for relief and should be dismissed, it follows that plaintiffs have failed to establish any likelihood of success on the merits, let alone that necessary to warrant the granting of injunctive relief. Moreover, even if this recommendation of dismissal is not adopted, the preliminary injunction should be denied because plaintiffs have failed to show any irreparable harm. There has been no showing that the senders of mail containing stamps, upon learning that stamps cannot be sent into the institution, will not remove the stamps from the mail and return it to the inmate. The request for injunctive relief requests no more than delivery of the mail in this manner, and should fail because it does not show that the same result will not be achieved in the absence of such relief.

## APPOINTMENT OF COUNSEL

Plaintiffs have requested that the court appoint counsel for them. The Eighth Circuit Court of Appeals has held that counsel should be appointed, upon request, for an indigent civil rights plaintiff if the plaintiff has met his burden of demonstrating that his complaint is not frivolous, depending upon the court's assessment of the need for counsel, including consideration of such factors as the factual complexity of the case, the ability of the plaintiff to investigate the facts, the existence of conflicting testimony, the plaintiff's ability to present his claims and the complexity of the legal issues. <u>In re Lane</u>, 801 F.2d 1040, 1043-44 (8th Cir. 1986); <u>Johnson v. Williams</u>, 788 F.2d 1319, 1322-23 (8th Cir. 1986). Applying these considerations, I shall deny plaintiffs' request for appointment of counsel in this matter.

IT IS ORDERED:

1. Plaintiffs' request for appointment of counsel is hereby denied.

2. The clerk shall issue summons for service upon the defendants.

3. The United States Marshal shall serve such summons without the payment of costs, in accordance with <u>Fed.R.Civ.P.</u> 4(c)(2)(C)(ii).

7

4.  After an appearance has been filed by any defendant, the plaintiffs shall serve upon such defendant or, if the appearance has been entered by counsel, upon such counsel, a copy of every further pleading or other document submitted for consideration by the court.  Plaintiffs shall include with each original document submitted to the clerk of the court for filing a "Certificate of Service" stating the date a true and correct copy of such document was mailed to such defendant or his or her attorney.  Any pleading or document submitted to the clerk for filing which does not bear a Certificate of Service will be returned, unfiled, to the plaintiffs and will not be considered by the court.  Likewise, any other communication directed to the court will not be considered unless it bears either a Certificate of Service or other notation indicating a true and correct copy has been mailed or delivered to such defendant or his or her counsel.

5.  The plaintiffs shall keep the court informed of their current addresses at all times during the pendency of this action, and shall promptly notify the office of the clerk and the defendants or their counsel of any changes in such addresses.

FURTHER ,IT THEREFORE IS HEREBY RECOMMENDED, pursuant to 28 U.S.C. §636 (b)(1)(B), that the due process and equal protection claims and the pendent state law claims be dismissed.

Plaintiffs are hereby notified that unless objection is made within eleven days after they are served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.

Dated August 29, 1988.

BY THE COURT

*[signature]*
United States Magistrate